SARAH A. GOODNOW *vs.* ELAM B. SHATTUCK.
SAME *vs.* WILLIAM B. GOODNOW.

Worcester. Oct. 4, 1883. — Jan. 5, 1884. FIELD & W. ALLEN, JJ., absent.

A married woman, whose husband, by reason of domestic troubles between them, has removed from the house formerly occupied by them and owned by him, and taken up his abode elsewhere, she remaining in the house, cannot maintain an action against a subsequent lessee or a grantee of the house, for acts of dominion exercised by them tending to disturb her occupation, no assault having been committed upon her, although the lease and conveyance are made for the sole purpose of dispossessing her; and an ante-nuptial agreement, by which her husband promised her the use of the house for one year after his death, provided he should then be the owner or occupant, does not enlarge her rights.

TWO ACTIONS OF TORT for entering a certain house in Worcester owned by the plaintiff's husband and occupied by her, and doing certain acts therein tending to disturb her occupation. The cases were tried together in the Superior Court, before *Gardner*, J., who reported them for the determination of this court, in substance as follows:

The plaintiff offered evidence tending to show the acts complained of.

There was also evidence tending to show that, prior to December 1, 1880, Edward A. Goodnow, the husband of the plaintiff, was the owner of the premises in question, and that the plaintiff and her husband lived together in said house; that, owing to domestic troubles between them, he had removed from the house and taken up his abode elsewhere, and had provided no suitable place for his wife to live in, but left her living in said house. He had offered to take her to a public house in Worcester, where he had gone to live; but the plaintiff offered evidence tending to show that the same was not a suitable place for her to live in.

There was also evidence tending to show that an ante-nuptial contract was entered into between the plaintiff and her husband, providing that, if she survived him, she should have the absolute disposal of all the household furniture which should at that time belong to his estate; and that she should also have the use and occupation of said house for the term of one year from his decease, free from rent, taxes, and all charges and expenses

whatever, provided he should be the owner and occupant at that time.

There was also ·evidence tending to show that, on or about December 1, 1880, the plaintiff's husband executed and delivered a lease of said house and the furniture to the defendant Shattuck; and the acts of Shattuck, which are complained of, were done after said lease.

The plaintiff offered to show that said lease was made by her husband, and received by Shattuck collusively, and to enable her husband, with the aid of Shattuck, to force the plaintiff from the premises; and that the acts of Shattuck complained of were not done by him as a tenant or occupant under said lease, but in pursuance of a conspiracy between himself and her husband to compel her to leave the premises; and that said lease was made only for the purpose of furnishing Shattuck with a legal justification for the acts complained of against him. The judge excluded this evidence.

There was also evidence tending to show that Shattuck continued the acts complained of until about December 23, 1880; that thereupon the defendant Goodnow, who was a brother of the plaintiff's husband, came upon the premises and did the acts complained of in the action against him, with the view of aiding and abetting the plaintiff's husband and Shattuck in carrying out their purpose and design of compelling the plaintiff to leave the premises, her husband at that time not having provided any other suitable place for her to live in; that, before the commission of the acts of the defendant Goodnow, the plaintiff's husband made and delivered to him a deed of said premises and a bill of sale of the furniture; and that Shattuck at the same time assigned said lease to him.

The plaintiff offered to show that said deed, bill of sale, and assignment were made collusively, and in fraud of the rights of the plaintiff, and to prevent her from receiving any benefit intended for her in the provisions of the ante-nuptial contract, to enable her husband to force her from the premises, and to furnish the defendant Goodnow with a legal justification for the acts complained of. The judge excluded this evidence.

A verdict for the defendant was ordered in each case. If, upon the proof and offer of proof, the plaintiff was entitled to

maintain her actions, or either of them, the verdicts were to be set aside, and new trials granted; otherwise, the verdicts to stand.

*F. A. Gaskill*, for the plaintiff.

*F. P. Goulding*, for the defendants.

HOLMES, J. It is admitted that no assault was made upon the plaintiff. The acts for which the defendants are severally sued were acts of dominion, which they had a right to exercise by reason of their respective titles as lessee and owner of the premises. Even if the plaintiff had a standing to require a surrender of the lease and a reconveyance of the fee, still, so long as the defendants retained their titles, it would be hard for a common law court to say that they had not the rights incident to them.

But the plaintiff had no standing to complain of either lease or conveyance. Whatever rights a wife may have to use the credit of her husband if he wrongfully fails to give her a suitable home, she certainly cannot seize upon any house of his that happens to please her, nor can she forbid him to sell or let his land to any person he sees fit, nor can she forbid his purchaser or lessee to exercise their ordinary rights as such. It does not strengthen her case if the conveyance is made and accepted for the sole purpose of turning her out. Generally speaking, what a man may lawfully do foreseeing that it will have a certain consequence, he may lawfully do intending to produce that consequence. In the present case, at least, the intent makes no difference.

The ante-nuptial agreement, by which her husband promised her the use of his house for one year after his death, provided he should then be owner and occupant, did not enlarge her rights. Her husband's promise did not limit his sole right to determine whether he would remain an occupant of the house. It was conditional upon his doing so, and he had already determined not to. He had left the premises for other reasons than the wish to injure her, before the lease was made. But if the contract had forbidden him to do as he did, it would not have authorized her to hold the property in order to maintain his occupancy, or have given her any interest in the house before his death, or have imposed any legal duty upon third persons before that time. *Judgment for the defendants.*