THEOPHILUS KING, JR., assignee, *vs.* A. D. NICHOLS.

Suffolk.    March 11. — Oct. 23, 1884.    DEVENS & COLBURN, JJ., absent.

B. gave his promissory note to A. in exchange for certain shares of stock in a cor-
poration, and received from A. an agreement, by which A. agreed, if B. desired
it, to pay the note at maturity and accept the shares of stock as payment.    A.
lent the note to a firm of which he was a member, and the firm pledged the note
with other securities as collateral security for the note of the firm.    The pledgee
took a good title to the securities.    Subsequently, the firm became insolvent,
and B. furnished it with sufficient money to pay its note, and received from the
pledgee the securities which had been pledged, together with his own note.    B.
also surrendered to A. the shares of stock mentioned in the agreement between
them.    *Held,* that the assignee in insolvency of the firm and of A. could not
maintain an action against B., under the Pub. Sts. *c.* 157, §§ 96, 98, to recover the
note given to A., or its value, although B. had reasonable cause to believe that
A. and his firm were insolvent, when he received the note from the pledgee.

If a case is submitted to the jury under instructions which permit them to find a
verdict for a party who has not offered evidence sufficient in law to sustain a
verdict in his favor, the other party is entitled to a new trial.

C. ALLEN, J.    This was an action brought by the assignee
of Nathan Pike and Company, insolvent debtors, to recover back
from the defendant certain amounts received by him under the
circumstances hereinafter stated, on the ground that the same
were a preference, or were payments of money or transfers of
property made in fraud of the insolvent laws.    Pub. Sts. *c.* 157,
§§ 96, 98.    The verdict was for the plaintiff, for the full amount
claimed, and the defendant now contends that the case was tried
upon an immaterial issue, namely, whether the defendant had
reasonable cause to believe that Nathan Pike and Company
were insolvent; whereas the defendant in the argument before
us contends that the plaintiff is not entitled to maintain his
action in any view of the facts which appeared at the trial,
even conceding that the defendant had such reasonable cause
of belief.    From the bill of exceptions there does not appear to
have been any controversy as to the existence of the facts now
relied on by the defendant, though their competency in evidence
was in part disputed.    Those facts are as follows:

On May 23, 1881, the defendant gave his negotiable promis-
sory note for $1640.75 to one Ambler, in exchange for 152
shares of stock in a corporation, receiving at the same time

from Ambler the following written agreement: " Received from A. D. Nichols his note for $1640.75 in payment for 152 shares of the capital stock of the Hot Air Boot Tree Manufacturing Company, and I hereby agree, if it is his desire, to pay the note at maturity, and accept the said stock (152 shares) as payment from him, or to renew the note with interest at six per cent. J. A. Ambler." The meaning of the agreement " to pay the note at maturity, and accept the said stock as payment from him," appears to have been, that Ambler contemplated transferring the note to somebody else, and he agreed in such case to take it up at maturity, and then, having done so, to accept the stock as payment thereof. By the agreement thus construed, the defendant was to have the option of treating the sale of the stock as subject to rescission by him, at the maturity of the note, and Ambler was bound to have the note in his possession at that time, so that the defendant might avail himself of this option, and return the shares, and obtain the note. That the defendant understood that such a transfer of the note might probably be made further appears from his answer; which sets up that, at the time when the note was given, it was orally agreed between Ambler and himself that it might be used as collateral security, but should not go beyond the control of Ambler; and that, in accordance with this agreement, Ambler allowed it, with sundry other notes, to be deposited as collateral security for a loan of $2500.

The above agreement was renewed with a new note for $1673.56, given August 13, 1881, in payment of the original note and interest thereon. The new note came into the possession of Nathan Pike and Company, a firm of which Ambler was a member, and of which Pike was the principal financial and business manager. The note was indorsed and delivered by Ambler to Pike, they intending it as a loan to the firm ; and was by the firm transferred to note brokers, to be by them held, with certain other notes transferred at the same time, as collateral security for a note of $2500 given by Pike and Company to the note brokers, on which, by reason of a partial payment, a somewhat less sum was due on Febuary 16, 1882. There was nothing to show, and it was not suggested in argument before us, that this transaction with the note brokers was otherwise

than in good faith on both sides, and it is therefore to be assumed that the note brokers took and held a good title as pledgees to all the securities, as collateral security for the balance due on the note of $2500. On February 16, 1882, Pike and Company and the several members of the firm being then insolvent, and Ambler not having funds to redeem the pledge, the defendant furnished Pike and Company money sufficient to pay their indebtedness to the note brokers; and, upon the payment thereof, the collateral securities, including the defendant's own note, were passed into the hands of the defendant, who thereupon surrendered to Ambler the 152 shares of stock, which was at this time of small value. The defendant retained his own note, collected the other collaterals in part, and from the proceeds reimbursed himself in full for the money furnished by him to Pike and Company, and had $500.49 remaining in his hands as surplus, besides certain other of the collateral notes which he did not collect, and which he has delivered to the plaintiff. The defendant admitted the sum of $500.49 to be due to the plaintiff, and no question of law arises as to that. But the plaintiff was allowed to recover a verdict which included also the amount of the defendant's own note, and the question is whether, upon the foregoing facts, this was right.

The agreement of Ambler with the defendant would not so attach to the note as to destroy its negotiability, or affect the rights of one who before its maturity should become a *bona fide* holder thereof for value, without notice. But as against Ambler himself, or Pike and Company, the defendant would have a right to avail himself of his agreement, in some appropriate form. It was executed at the same time with the note, and expresssly provided that the payee of the note should accept the shares as payment. It is not material to determine precisely in what manner the defendant could best avail himself of his rights under the agreement; whether by way of direct defence to an action upon the note, either under the rules of the common law or under the St. of 1883, *c.* 223, § 4, which enables defendants to make equitable defences in actions at law; or whether he could set up in defence damages sustained by him, by reason of a breach of the agreement, by way of recoupment; or whether he would have to bring a cross action. It is sufficient

for the purposes of this case that it was a valid contract between the parties, and binding upon Ambler. *Greely* v. *Dow*, 2 Met. 176. The firm borrowed the note, and indorsed and delivered it to the note brokers as a part of the collateral security. The defendant's consent that Ambler might use it would not entitle the firm to hold it free from the equities binding Ambler. The plaintiff contends that their knowledge or notice of the agreement would not subject them to the equities binding Ambler, because the agreement contained an implied consent that Ambler might use the note. Without considering this, it appears in the present case that, when the note was indorsed and delivered by Ambler to Pike, they intended it as a loan to the firm. A mere borrower of a note does not become a holder for value, and stands no better than a mere donee, and gets no superior equity to that of the payee. If in any case a partnership can take a note from one of its members free from the equities binding him, this result does not follow when the note is merely lent for the accommodation of the firm. And although, by pledging it, the pledgee might acquire the rights of a *bona fide* holder for value without notice, yet, upon its coming back into the firm's hands again, the equity of the maker would revive. *Sawyer* v. *Wiswell*, 9 Allen, 39, 43.

The plaintiff, as assignee in insolvency, would have no greater rights than Pike and Company themselves had, and would take it subject to all equities to which it would be subject in their hands, unless specially provided otherwise by statute. *Holmes* v. *Winchester*, 133 Mass. 140, 142, and cases there cited. Even while the note was in the hands of the pledgees, Nichols would be entitled to equitable relief, by compelling them to exhaust their other securities first, before resorting to his note, or by being subrogated to their rights in respect to the other securities, upon paying the debt due to them for the purpose of releasing his own note from the pledge. It is in principle like the ordinary case where a creditor holds security upon two funds, and some one else has a subsequent equitable interest in one of them. It was the right of the defendant that the other securities held by the note brokers should first be applied to the payment of the debt, so that, if these should prove sufficient

for the full payment thereof, the note of the defendant should be returned to Pike and Company, in whose hands it would be subject to the equity created by the agreement of Ambler.

The general creditors of Pike and Company, and their assignee in insolvency, had no equitable right to prevent this from being done. On the contrary, the original agreement between Ambler and the defendant being valid, and the pledge by Pike and Company to the note brokers being also valid, the assignee lost nothing by the result of the transaction of February 16, to which he was entitled. The form of that transaction is immaterial. It is doubtful whether the defendant could have compelled the note brokers to execute to him an assignment of the collateral securities in their hands, if they were unwilling to do so ; his rights being fully protected by the equitable principle of subrogation in case of his paying their debt. *Lamb* v. *Montague*, 112 Mass. 352. Furnishing Pike and Company with the money, under the circumstances stated, was equivalent to paying it directly to the note brokers. The money went from the defendant for the sole purpose of extricating his note from the pledge to which it was subject, and was immediately applied to that purpose, and he thereupon received the whole of the collaterals. The circumstance that his money went through the hands of Pike and Company does not impair his equity, nor increase that of the plaintiff. No new property was transferred by Pike and Company in the transaction. They merely took the defendant's money from his hands, and applied it according to the obvious understanding between them. The case is by no means the same as it would have been if, in the course of the transaction, Pike and Company parted with any of their own funds or property, or in any respect changed their position for the worse. If, for example, they had raised money on any new pledge of securities, with the view and for the purpose of enabling themselves to regain possession of the defendant's note, in order that the defendant's equity might thus become available, the question presented would be quite different. But in the transaction of February 16 they parted with no property or rights of which their assignee could have availed himself if that transaction had not taken place ; and the defendant gained nothing to which he was not entitled under the rules of equity.

The transaction merely enabled him, in the first instance, to obtain his rights more directly and easily than he otherwise might, especially if the note brokers had refused to deal directly with him and he had been obliged to resort to a bill in equity to protect himself.

It is further contended by the plaintiff, that the questions now presented were not properly raised by the bill of exceptions. The defendant presented requests for instructions, which in terms are broad enough to include the grounds of the present decision; * though it would seem that the attention of the presiding judge was not called by the defendant to this aspect of the case at the trial. However this may have been, we are of opinion that the case must be treated as falling within the rule laid down in *Brightman* v. *Eddy*, 97 Mass. 478, that, where a case is submitted to the jury under instructions which permit them to find a verdict for a party who has not offered evidence sufficient in law to sustain a verdict in his favor, a new trial must be had. *Exceptions sustained.*

*B. Wadleigh,* (*R. P. Clapp* with him,) for the defendant.
*J. C. Coombs & N. U. Walker,* for the plaintiff.

---

* The defendant requested the judge to instruct the jury as follows: " 1. There was not sufficient evidence to warrant a verdict for the plaintiff. 2. The evidence showed that the transaction complained of, and claimed by the plaintiff to amount to a preference, was simply an exchange of securities, and was not of such a nature as to warrant the jury in finding for the plaintiff in regard to the $1640 note."