Caldwell's title being impossible, equity would not undertake to provide for a *casus omissus*, or to enlarge a purely statutory remedy. But the principle of this argument is disposed of by *Wiggin* v. *Heywood, ubi supra.* In the case of every attachment, a sale of the land by the mortgagee makes it impossible to carry out the statutory provisions concerning the levy of executions. The rights of Mrs. Caldwell are protected by making her a party to the bill. See Pub. Sts. *c.* 151, § 3.

*Demurrer of Hammond overruled. Demurrers of Continental National Bank and Clark sustained.*

W——— *vs.* W———.

Essex.    Nov. 4, 1885. — May 6, 1886.    FIELD & DEVENS, JJ., absent.

The practice of masturbation by a husband in the presence of his wife, but without compelling her to remain present, which injures her health by its effect upon her feelings, is not "cruel and abusive treatment," within the Pub. Sts. *c.* 146, § 1, making such treatment a ground for divorce.

HOLMES, J. The single question reserved is whether the practice of masturbation by a husband in the presence of his wife, but without compelling her to remain present, which injures her health by its effect upon her feelings, is "cruel and abusive treatment" within the Pub. Sts. *c.* 146, § 1.

We will assume, although it is not found as a fact, that the libellee knew how his conduct worked upon his wife, and we fully agree that, in general, foresight of a consequence of one's act has the same effect upon liability for producing it as intent to produce that consequence. *Commonwealth* v. *Pierce*, 138 Mass. 165, 179. *Goodnow* v. *Shattuck*, 136 Mass. 223, 225.

But the actual intent and purpose with which an act is done may be of importance when the question is not one of liability, but of dissolving the marriage tie. Certainly they may be made so by statute. The words "cruel and abusive treatment" seem to import on their face conduct directed towards the other party, and with a malevolent motive. Without deciding that a case

could not be imagined which would fall within the meaning of the words without such a motive, it is enough to say that purely self-regarding conduct, not forced upon even the knowledge of the wife otherwise than by the usual intimacy of matrimony, does not constitute the offence, merely because its folly, its disgusting character, or its wickedness disturbs her nerves or conscience, and thus affects her health.

*Libel dismissed.*

*J. F. Wakefield,* for the libellant.
No counsel appeared for the libellee.

---

MARY H. KELLEY *vs.* NEWBURYPORT AND AMESBURY HORSE RAILROAD COMPANY.

Essex.   Nov. 5, 1885. — May 6, 1886.   FIELD & DEVENS, JJ., absent.

A street railway corporation, which has duly filed the certificate required by the St. of 1871, *c.* 381, § 6, stating that the amount of its capital stock has been unconditionally subscribed for by responsible parties, and that fifty per cent of the par value of each share thereof has been actually paid into its treasury in cash, cannot escape liability upon promissory notes given in payment for the building of its road, on the ground that fifty per cent of the par value of each share of its capital stock had not in fact been paid in at that time.

A contract may be ratified by the stockholders of a corporation if it is made with full knowledge of all the material facts, although in ignorance of the legal effect of such facts.

As a general rule, a contract between a corporation and its directors is not absolutely void, but voidable at the election of the corporation; and the right to avoid it may be waived.

The directors of a street railway corporation made a contract with G. for building its road for a certain price in money and stock; and he gave to the corporation a bond, with A. and B. as sureties, for the faithful performance of his contract. G. failed to perform his contract, and the board of directors called on the sureties, who themselves were directors, to perform it, with notice that they would be held liable to the corporation for all damages that might accrue to the corporation by their default. Thereupon A. and B. proceeded to finish the road according to the contract, in which originally they had no interest. The price was fair and reasonable; the road, as completed by them, was a well-built road; the advancements made by them were in consequence of the notice given to them by the directors, and not with any fraudulent design to obtain any pecuniary benefit for themselves from the contract. The directors, acting under a general vote of the stockholders authorizing them to make any settlement,