WILLIAM H. WASHBURN *vs.* SARAH P. HAMMOND & others.

Bristol.    October 25, 26, 1889. — February 26, 1890.

Present: DEVENS, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Fraudulent Conveyance — Estoppel — Subrogation — Equity.*

A person lent money to a married woman upon her husband's assurance that certain real estate standing in her name was her property, and that no mortgage would be given thereon. Subsequently, on May 16, 1888, she mortgaged the real estate to secure her husband's note of that date, which was also secured by his mortgage of personal property. She and her husband then conveyed the real estate to his assignee in insolvency, who was also the husband's counsel, without consideration, for the benefit of his creditors, after which her creditor attached specially the real estate in an action at law against her. Afterwards, on June 19, the holder of the note and mortgage of May 16, as well as of the chattel mortgage, assigned the note and both mortgages, and still another mortgage made by the husband upon a mill and fixtures placed by him upon such real estate, to one who took them with notice and for value for the benefit of the assignee in insolvency to secure the property for the husband's creditors, and who thereupon gave notice of his intention to sell the real estate for breach of condition of the mortgage thereon. *Held,* on a bill in equity brought by her creditor to reach and apply the real estate in payment of his debt, and to prevent the sale, that the conveyance thereof to the husband's assignee in insolvency was fraudulent as to the plaintiff. *Held, also,* that the plaintiff's equity in the real estate was superior to that of the assignee of the note and mortgages, and that, upon payment to such assignee of the amount secured by it with interest, the plaintiff should be subrogated to the assignee's rights as holder of the note and the security therefor.

BILL IN EQUITY, filed in the Superior Court, on July 27, 1888, by a creditor of Sarah P. Hammond, against her and John S. Hammond, her husband, against his assignees in insolvency, Atsatt, Chamberlayne, and Paisler, and against one Warren, the assignee of certain mortgages given by her and by her husband to one Smith, to reach and apply in payment of a debt due from the first named defendant to the plaintiff certain real estate conveyed by her to Chamberlayne and attached specially by the plaintiff. The Hammonds in their answer averred that the real estate in question was purchased by the husband, but that the deed was taken in the wife's name, upon a secret trust in favor of the husband, the object being to remove the property beyond the reach of the present and future creditors of the husband.

At the hearing, before *Dunbar,* J., upon the pleadings and a stenographic report of evidence taken before *Bishop,* J. and himself, the following facts were agreed, or appeared in evidence.

On August 11, 1877, a part of the real estate in question was conveyed to Sarah P. Hammond, the husband paying part of the purchase money in cash, and she giving a mortgage thereon to secure the remainder. Subsequently and before he became insolvent, he made improvements on the real estate, among other things erecting a planing-mill and fixtures thereon. An adjoining lot of land, constituting the rest of the real estate in question, was also purchased by him and conveyed to his wife. In February, 1888, Hammond asked the plaintiff to indorse his note, and the latter agreed to do so if Mrs. Hammond would give him her note secured by a mortgage of her property. It was subsequently agreed, with her knowledge and consent, that the deeds of her real estate should be given to the plaintiff, and that no other mortgage of the property should be given thereon. Upon the deeds being given by her to the plaintiff, together with a note for five hundred dollars, dated February 13, 1888, signed by both husband and wife, and payable four months after date, the plaintiff indorsed a note of Hammond for the same amount. On March 19 following, Hammond mortgaged to Smith the planing-mill and fixtures, to secure his note for one thousand dollars to him, which with the mortgage was to become due on July 21. Early in May, 1888, Hammond, being further indebted to the plaintiff, proposed that the latter should accept two other notes signed by him and his wife, each dated May 8 and for six hundred dollars, one payable thirty and the other sixty days after date, for such indebtedness and for a new debt to the plaintiff then incurred by him ; and this arrangement also was carried out, with the wife's knowledge and consent. On May 16 the Hammonds gave a note for eight hundred dollars to Smith, payable June 19, secured by a mortgage given by Hammond alone upon personal property other than that included in the mortgage of March 19, and also secured by a mortgage of the real estate in question, executed on May 16 by Mrs. Hammond, and containing a power of sale. The property included in the chattel mortgage to secure this note was worth at the time it was given, and as late as September 1 following,

more than enough to pay the note. On May 29, Hammond, being insolvent, made an assignment to Chamberlayne, who was his counsel, of all his property for the benefit of his creditors, and subsequently Atsatt and Paisler were joined as assignees; and on June 4 Mrs. Hammond, who was inexperienced in business but knew all the facts, conveyed to Chamberlayne without consideration the real estate in question, to prevent the plaintiff from reaching the same. The deed of conveyance was in the ordinary form of a quitclaim deed, and merely recited the conveyance of the real estate to Chamberlayne in consideration of one dollar and other valuable considerations, without more. On June 18 the plaintiff brought an action on the promissory notes given to him by Mrs. Hammond and her husband, which were due and unpaid, and on June 21 attached specially as her property the real estate conveyed by her to Chamberlayne. On June 19 the eight hundred dollar note to Smith became due, and on June 21 Smith gave to Hammond notice of his intention to foreclose the chattel mortgage securing it, and duly recorded such notice on the same day. On July 19, 1888, Smith assigned to Warren for value the two mortgages which he held to secure the eight hundred dollar note; namely, the mortgage upon the real estate in question, and the chattel mortgage. On July 20 Warren gave notice of his intention to sell the real estate in question for breach of the condition of the mortgage. On July 23 Smith assigned to Warren, also for value, the one thousand dollar mortgage of personal property given to him by Hammond, which became due on July 21. Warren took no active part in procuring the assignments to him, but the transaction was begun and completed by Chamberlayne for the benefit of Hammond's creditors.

Chamberlayne testified, that at the second meeting of the creditors, on June 13, he held the deed of Mrs. Hammond's real estate subject to legal claims; and was willing to make a declaration of trust in the same if the creditors wished it. The plaintiff offered evidence tending to show that Chamberlayne did not disclose to the other assignees, or to the creditors of Hammond, that he had received the conveyance from Mrs. Hammond until after this bill in equity was filed by the plaintiff. Paisler testified, on cross-examination, in regard to the assignments to

Warren, that the latter "advanced the money to take up the mortgages with; the object was that he was to handle those mortgages as the assignees wanted them handled, providing he got his money back, for the benefit of the creditors."

The judge found that the conveyance from Mrs. Hammond to Chamberlayne was fraudulent as to the plaintiff; that such conveyance was not made known by him or by the Hammonds to his fellow assignees, or to the plaintiff, or to the creditors until after the bill was filed; that the value of the personal property included in the mortgage of May 16, at that time and as late as September 1 following, was more than sufficient to discharge the notes secured thereby; that Warren was the mere holder of the securities transferred to him for the benefit of the assignees or of Chamberlayne, and the latter's knowledge was to be imputed to him as such holder; and that the transfer to Warren was made for the purpose of enabling the assignees to enforce the collection of the eight hundred dollar debt out of the real estate, and to prevent the plaintiff from collecting his debt by means of his attachment of the same.

The plaintiff contended that the conveyance of the real estate made by Mrs. Hammond to Chamberlayne was void, because she possessed no other property, and disposed of this without consideration for the purpose of hindering and delaying the plaintiff in the collection of her indebtedness to him; that Warren's purchase from Smith of the eight hundred dollar note and of the two mortgages had been made for the same purpose, and that Warren was proceeding to sell the real estate under the power in the mortgage, instead of enforcing the mortgage of the personalty, in order to prevent the plaintiff from enforcing his special attachment of the equity of redemption; and that Warren should be required to exhaust the security in his possession under the mortgage of the personal property before proceeding to enforce the payment of his claim by sale of the mortgage of the real estate, or, on payment to him of the eight hundred dollars and interest, to assign and transfer to the plaintiff the note and the two mortgages; and that, upon such payment, the plaintiff should be subrogated to all of Warren's rights as holder of such note.

The defendants contended, that the conveyance of the equity of redemption in the real estate to Chamberlayne by Mrs. Hammond was valid, because, although it was the only property she possessed, and no pecuniary consideration passed at the time of the conveyance, yet the transfer itself was upon a good consideration, in that the real estate had been originally purchased with money furnished by Hammond, and that within a few months before her husband's assignment for the benefit of creditors he had, while he was insolvent, made, with her consent, with money taken from his own business, extensive improvements upon the real estate; that Chamberlayne was the grantee for the benefit of Hammond's creditors, that the conveyance was in fact made to him for their benefit, and that in conveying to him the property Mrs. Hammond was only restoring to the creditors what should rightfully be applied for their benefit.

The defendant Warren contended, that, even if the conveyance to Chamberlayne was void, yet being assignee of the mortgages he should be left free to enforce the security as he saw fit, and not be compelled to assign it or submit to the plaintiff's being subrogated to his rights upon the payment of only eight hundred dollars and interest, because, at the time of his purchase from Smith of the eight hundred dollar note, he also had purchased as a part of the same transaction the one thousand dollar note secured by a chattel mortgage covering certain other personal property; that among this property was some which might be considered fixtures to Mrs. Hammond's real estate; that, owing to the controversies which might arise concerning the respective rights under this mortgage and under the eight hundred dollar mortgage of the real estate, the value of this mortgage would be seriously impaired if he did not also control the mortgage of the real estate; and that the equity of subrogation should not be exercised here, as it would thus deprive him of a collateral advantage arising from his controlling two funds.

The judge made a decree that the plaintiff, upon payment to Warren of the amount of his claim, might be subrogated as holder thereof, with the security therefor, in place of Warren, with all the latter's rights; that upon payment to Warren, within sixty days, of the sum of eight hundred and forty-one

dollars, with the interest thereon from July 19, 1888, being the amount of his claim secured by the two mortgages of May 16, the plaintiff should be subrogated as holder of such claim, with the security given therefor, in place of Warren, and with all the rights of enforcing the mortgage appertaining to him at the time of the assignment of the mortgages to Warren ; and that the plaintiff should recover his costs of suit against the defendants.

The judge, at the defendants' request, reported the case, with the evidence, for the consideration of this court, upon the question whether the decree and findings of fact were justified by the evidence.

*L. D. Brandeis*, for the defendants.

*H. M. Knowlton & F. A. Milliken*, for the plaintiff.

C. ALLEN, J.    It was contended on behalf of the defendants, at the argument before us, that this court should look at the evidence independently of the findings by the judge of the Superior Court, inasmuch as only one witness, namely, the defendant Chamberlayne, appeared personally before him, and the case was decided almost wholly upon certain facts which were agreed, and upon a stenographic report of testimony taken before another judge.    Upon an examination of the testimony and agreed facts, we are brought to the conclusion that the decree entered in the Superior Court was right.

The plaintiff was a creditor of Mrs. Hammond.    He held three notes signed by herself and by her husband.    She was the owner of the real estate now in controversy.    The record title stood in her, and the circumstances under which she took that title negative any resulting trust in her husband.    *Whitten* v. *Whitten*, 3 Cush. 191.    *Edgerly* v. *Edgerly*, 112 Mass. 175.    *Cormerais* v. *Wesselhoeft*, 114 Mass. 550.    It is stated in the answer of Mr. and Mrs. Hammond, that she took the title upon a secret trust in his favor, but the evidence does not support this averment.    Moreover, so far as the plaintiff is concerned, the husband could assert no right or claim, because he expressly assured the plaintiff that she owned the property, and thereby induced the plaintiff to lend his money upon Mrs. Hammond's credit as such owner.    At first, the plaintiff was to have a mortgage from her; but he contented himself with taking into his

possession her title deeds, with, as he testified, an assurance by Hammond that he "would not give another mortgage of the place." These assurances were given before the plaintiff took his first note ; and upon the testimony there can be no doubt that at the time of taking the two later notes he relied on the same assurances and understanding, and that it was intended by Mr. and Mrs. Hammond that he should do so.

Soon afterwards, Mr. and Mrs. Hammond gave to one Smith a note for eight hundred dollars secured by a chattel mortgage executed by Hammond, and a mortgage of the real estate executed by Mrs. Hammond. Soon after doing this, Hammond, being insolvent, made a voluntary assignment of his property for the benefit of his creditors to the defendant Chamberlayne. A few days after this, Mrs. Hammond, knowing the facts, conveyed the real estate to Chamberlayne, without any valuable consideration. It abundantly appears by the evidence, that both she and Chamberlayne intended by this means to prevent the property from being reached by the plaintiff, who, with the exception of Smith, was perhaps her sole creditor, she however being unacquainted with business, and not fully appreciating the nature of what she was doing.

It was contended at the argument, in behalf of the defendants, that Chamberlayne in reality took this deed for the benefit of Hammond's creditors, though no mention of this was made in the deed itself. There was no evidence in direct support of this contention. Chamberlayne himself testified that he stated to Hammond's creditors at their second meeting, which was nine days after the deed to him was given, that he held a deed of Mrs. Hammond's real estate, subject to legal claims, and that he would make a declaration of trust in the same if the creditors wished it. There was other evidence which led the judge of the Superior Court to find that this disclosure was made at a later date. But if we assume, as we are content to do, that the disclosure was made at the earliest practicable time, and that the deed was taken at the outset by Chamberlayne with the purpose of holding it in trust for the benefit of Hammond's creditors, this does not relieve the stress of the situation. Mrs. Hammond was not liable for her husband's debts to his general creditors, and she was liable to the plain-

tiff, and she had no right to divert her property from her own creditor in order that it might go to her husband's creditors.

The purpose with which her deed was given and received was to hinder, delay, and defraud her creditor, the plaintiff, by putting it out of his power to reach her property by legal process. It was done under the advice of counsel: one note of the plaintiff would fall due within seven days, and another within twelve days; she had no other property; and upon the evidence there is no doubt that such was the object of the transaction. It is a question of fact; but upon the clear facts, the transaction was one which the law stamps as a fraudulent conveyance; that is, a conveyance made with intent to hinder, delay, and defraud creditors. *Winchester* v. *Charter*, 12 Allen, 606. *Cook* v. *Holbrook*, 146 Mass. 66. *Bernard* v. *Barney Myroleum Co.* 147 Mass. 356, 359.

The attachment by the plaintiff was therefore valid, under the Pub. Sts. c. 161, § 66, and gave to him a lien upon the property, and entitled him as an attaching creditor to redeem the land from the mortgage to Smith. *Briggs* v. *Davis*, 108 Mass. 322. *May* v. *Gates*, 137 Mass. 389. Smith held security upon the personal property covered by his chattel mortgage, as well as upon the real estate. It was found by the judge as a fact, that the property included in the chattel mortgage was more than sufficient to pay the debt secured by the two mortgages. The plaintiff under his attachment could resort only to the real estate. He was thus entitled in equity to require Smith to exhaust the personal security first, or, upon payment by him to Smith of the amount of his debt, to be subrogated to his right to enforce the security in the first instance upon the personal property. *King* v. *Nichols*, 138 Mass. 18, 21. And see numerous cases cited in Sheldon on Subrogation, § 61.

The defendant Warren, the present holder of Smith's mortgages, is bound by the same equity. He certainly in this respect stands no stronger than his assignor.

It is now contended, however, that Warren has another and a distinct equity, growing out of the fact that he holds by assignment from Smith another note of Hammond, for one thousand dollars, secured by a separate mortgage of personal property, consisting of a planing-mill and machinery placed upon the

real estate in question. It is urged that he would be embarrassed and put to inconvenience in enforcing this mortgage, if the plaintiff should be put in control of the mortgage of the real estate. The situation of affairs will be better understood by a recurrence to the dates and order of events. The first note of Mr. and Mrs. Hammond to the plaintiff was dated February 13, 1888. The one thousand dollar note of Mr. Hammond alone to Smith, secured by the mortgage of personal property above referred to, was dated March 19. The second and third notes of Mr. and Mrs. Hammond to the plaintiff, for twelve hundred dollars, were dated May 8. The eight hundred dollar note of Mr. and Mrs. Hammond to Smith, secured by two mortgages, one of personal property from Mr. Hammond, the other of real estate from Mrs. Hammond, was dated May 16; Hammond's assignment for the benefit of his creditors, May 29; Mrs. Hammond's deed of real estate to Chamberlayne, June 4. On June 21 Smith gave and recorded the statutory notice of his intent to foreclose the mortgage of personal property which he held to secure the eight hundred dollar note. On the same day, two notes having fallen due, the plaintiff made his special attachment of the real estate conveyed by Mrs. Hammond to Chamberlayne. On July 19 Smith assigned to Warren the two mortgages given to secure the eight hundred dollar note, and presumably the note itself, though this is not expressly stated, and on the same day Warren published notice of his intention to sell the real estate under the power of sale contained in the mortgage of real estate. On July 23 Smith assigned to Warren the mortgage of personal property given to secure the one thousand dollar note. Warren's part in the transaction appears to have been conducted by Chamberlayne, and it is not pretended but that he either actually had, or at least is bound by, the knowledge which Chamberlayne had, so far as that may be material. Paisler, one of Hammond's assignees, and one of the defendants, testified on cross-examination that the object of Warren's taking the mortgages " was to handle those mortgages as the assignees wanted them handled, providing he got his money back "; and this appears to have been the fact.

It thus becomes very plain that Warren has acquired no equity superior to that of the plaintiff. The mortgage to

secure the note of one thousand dollars was considered and treated as a mortgage of personal property. Hammond had no title to the real estate. Mrs. Hammond, who had the title, did not join in the mortgage. This mortgage could not in any way affect her real estate, and it was not designed or understood to do so. When she afterwards gave to Smith the mortgage upon her real estate, to secure another note signed by herself, the mortgage was subject to redemption upon the payment of the note which it was given to secure, without any reference to the effect of such redemption upon her husband's earlier mortgage of personal property. When Warren, on July 19, took an assignment of the two mortgages given to secure the eight hundred dollar note, and on the same day instituted proceedings to foreclose the mortgage upon the real estate, the proceedings by Smith to foreclose the personal mortgage were already well advanced, and the foreclosure must soon have become absolute, unless there was something to the contrary in the arrangement between Warren and the assignees; and the personal property, as already stated, was more than enough to pay the note. The equity now relied upon to defeat the plaintiff's equity grows out of Smith's assignment to Warren, four days later, of Hammond's earlier mortgage upon his personal property to secure the one thousand dollar note. Upon comparing the equity of the plaintiff with that of Warren, it is apparent that the former is superior. The debt secured by the mortgage upon the real estate would have been satisfied by the foreclosure of the mortgage upon the personal property, but for the interference of the defendants. The object of that interference was to divert the property, so that the creditors of Hammond should receive the benefit of it. Indeed, the defendants concede upon their brief, that, " while a loss to the plaintiff was probably regarded as a necessary result of the plan proposed, there was no primary desire to injure the plaintiff." The purpose was to secure the property for Hammond's creditors by depriving the plaintiff of the power to avail himself of his lien upon it. Under such circumstances, foreseeing the consequence and intending it amount to the same thing. *Goodnow* v. *Shattuck*, 136 Mass. 223, 225. *Commonwealth* v. *Pierce*, 138 Mass. 165, 179. .*W*—— v. *W*——, 141 Mass. 495. Whether under any

circumstances the protection of a defendant's collateral right growing out of another transaction would of itself alone furnish a sufficient reason for refusing to allow to a plaintiff an equitable right of subrogation to which he would otherwise be entitled, need not be considered. We need only to pay regard to the circumstances of the case before us. The protection of Warren in the situation in which he voluntarily placed himself, with his eyes open, seems to be but an incidental purpose of the defence; the main object being to carry out the original plan, and to secure to Hammond's creditors a benefit to which they are not entitled. The rights of the assignees are subject to the same equities that Hammond himself was subject to. 2 Story, Eq. Jur. §§ 1228, 1229. *Pierce* v. *O'Brien*, 129 Mass. 314. *Chace* v. *Chapin*, 130 Mass. 128, 131. The entry must be,

*Decree affirmed.*