ELBRIDGE NOYES *vs.* THOMAS NOYES & another, executors.

Essex.    March 17, 1916. — May 17, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Practice, Civil,* Exceptions, Conduct of trial, New trial on ground of mistake. *Evidence,* Opinion.  *Contract,* Rescission, Performance and breach.  *Damages,* In contract.  *Devise and Legacy.  Election.  Mistake,* As ground for new trial. *Supreme Judicial Court.*

In an action, where the genuineness of the signature of a deceased person was a material issue, this court was of opinion that the testimony of a certain witness that the signature in question was genuine, which was admitted at the trial by the presiding judge, should have been excluded on the ground that the witness did not have sufficient knowledge of the signature of the decedent to qualify him as a witness on the subject, but, inasmuch as there was abundant other testimony on both sides as to the genuineness of the signature, and this witness was not of such commanding position or influence that his opinion would have unusually persuasive force with the jury, as there had been discussion in the presence of the jury in regard to the competency of this witness, as he himself had expressed a doubt as to his testimony being of value and as the judge had received it with evident reluctance and with a careful warning to the jury that the witness's lack of familiarity with unquestioned signatures of the decedent was to be considered in passing upon the weight to be given to the evidence, it was *held,* that, although the evidence was admitted improperly, the error had not affected injuriously the substantial rights of the adverse party and that therefore under St. 1913, c. 716, § 1, the exception to the admission of the evidence should be overruled.

In the same case this court overruled an exception to the admission of testimony that the signature was genuine by another witness, who had greater familiarity with the signatures of the deceased, although the court was of opinion that it would have been a wiser exercise of discretion not to permit him to testify.

In an action against the executor of the will of the plaintiff's father on an agreement in writing dated and alleged to have been executed by the plaintiff's father more than fifteen years before his death, whereby he promised to give to the plaintiff certain specific property "in consideration that he remain on the farm and manage the same for me in my old age," the defendant contended that the

plaintiff could not recover because the contract had been rescinded as matter of law. It was not disputed that the plaintiff received from his father some compensation for work on the farm all the time after the date of the contract. It appeared that a little over five years after the date of the contract the plaintiff and his father made and signed an agreement in writing as follows: "Agreement between [father and son named] for one year from [the date]. E. N. [the plaintiff] shall receive for services, carrying milk, and general farm work the sum of nine dollars per week. Specified, E. N. shall render an account of money received from milk and other farm produce once a month and also receive his payment in full for services rendered," and that at the time this agreement was signed the plaintiff gave to his father a receipt, dated back about a month and a half, as follows: "Received from J N $200 in full for all demands to this date." The evidence was conflicting as to the circumstances which led to the making of this agreement and the giving of the receipt, and there was evidence of the defendant of circumstances and of conduct of the plaintiff tending to show a rescission of the earlier contract, which was met by evidence of the plaintiff tending to explain such circumstances and conduct. It appeared that the farm was a small one, the management of which would not take all the time of the plaintiff, who was a young man with a family. *Held,* that it was not necessarily inconsistent with the earlier contract that the plaintiff should continue to receive pay for work actually performed by him and that it could not be said that as matter of law the contract had been rescinded, the question of rescission being one of fact.

In the case above described it appeared that the father was vigorous almost up to the time of his death at the age of about eighty-nine years, that when the earlier contract with the plaintiff was made he was about seventy-two years of age, and there was evidence tending to show that the plaintiff performed such services of management as naturally would fall to his charge in view of his father's vitality and years. *Held,* that the son's readiness to carry the entire burden if the necessity for it arose and his actually doing all that his father was willing to leave to him might have been found to have been the consideration required by the contract, and that the question whether the plaintiff had performed his part of the contract by managing the farm was a question of fact.

In the case above described it appeared that the will of the plaintiff's father contained a general direction to pay all the testator's debts and that a part of the property promised to the plaintiff by the contract and also other property not included in the contract were devised specifically to the plaintiff by the will. The judge instructed the jury that the measure of damages was the difference between the value of the property described in the contract and the portion of the property so described which the plaintiff took under the will, and refused to rule that the plaintiff was entitled to recover only the difference between the value of the property described in the contract and the value of all the property devised to him by his father's will. *Held,* that there was no error in the instruction; that the plaintiff's claim for breach of contract was in the nature of a debt and that the loss suffered was the value of the property promised to him diminished only by the partial performance of that promise by the testamentary gift.

Where there is no statement in a will that a devise or legacy is in payment of a debt in whole or in part, the general rule is that the testamentary gift is to be regarded as a benefaction and not as a payment.

In the case above described there was ground for the contention that, if the plaintiff's claim was satisfied in full, the devises and legacies contained in the will of the plaintiff's father could not take effect according to the tenor of the will, and

that the plaintiff by accepting the benefits given him by the will had exercised an election to ratify its provisions. This contention was introduced by the defendants for the first time at the argument before this court. It was not raised by their answer and was not presented at the trial, nor was it presented at a previous trial of the case, and it was not within the scope of any of the general requests for rulings addressed to the presiding judge. *Held*, that the contention was not open to the defendants upon the exceptions before this court, but it was *said* that, before the entry of final judgment, the defendants had the right to move in the Superior Court for a new trial on the ground "that, by mistake of parties or counsel, . . . a question of fact which is essential to the determination of the rights of the parties has not been tried."

It here was *said* that it was not necessary in the present case to decide whether, in a case where it appears to be necessary to prevent a miscarriage of justice, a point not theretofore raised at any state of the proceedings may be acted on by this court to accomplish a right result in accordance with the law.

CONTRACT for the breach of an alleged agreement in writing which is printed below. Writ dated July 2, 1914.

The contract declared upon was as follows:

"December 4, 1895.

"This is to certify that I, James Noyes, do promise to give to my son Elbridge Noyes my homestead place, all of my adjoining meadow, my Knight Pasture, Highfield Pasture, all of my stock consisting of cows, horses, hogs, and all of my farming implements, carts, wagons so forth in consideration that he remain on the farm and manage the same for me in my old age if he should leave at any time this agreement shall be valid and he shall share as I may make further provisions.

"James Noyes.

"And I, Elbridge Noyes do promise to stay on the farm and comply with the above wishes and to carry out this agreement with my father, James Noyes, to the best of my ability.

"Elbridge Noyes."

In the Superior Court there was a second trial of the case before *Sanderson*, J. The evidence is described in the opinion. James Noyes died on January 1, 1913, survived by five sons, two daughters and three grandchildren, who were the issue of two deceased sons. He left real estate valued at $10,935 and personal property valued at $12,921.44. His will was dated July 3, 1903. The following extract from it shows the provisions for the plaintiff

and also the devise of the homestead to the testator's son James Addison Noyes, who was appointed one of the executors:

"To my son Elbridge Noyes of said Newbury two pieces of land in said Newbury known as the 'Jerry' field, and the 'Ilsly' field, containing about ten acres, these lots being bounded on the east by land of Knight, Ilsly, and Noyes; on the south by land of Rolfe and Bray; on the west by land formerly of David Little; and on the north by Hay street.

"Also one piece of marsh land off Plum Bush known as the 'Barn' lot, containing about ten acres. Also the piece of marsh land, known as the 'Smith' lot adjoining the above mentioned 'Barn' lot on the south, containing about fourteen acres.

"Also one undivided half of the 'Highfield' pasture so called in said Newbury, said half being about twenty acres.

"Also one undivided half of the cow pasture in said Newbury, on the road leading to Knight's Mill, said pasture being located near Fowle's ice house.

"Also one undivided half of the 'Bradley' meadow in the Town of Rowley, near Cedar Point said half comprising about six acres.

"I desire the appointment of my sons Thomas Noyes, and James Addison Noyes, as the Executors of this my last will, and request that they may be exempt from giving any surety or sureties on their Probate bond.

"To my son James Addison Noyes of said Newburyport, my homestead lot in said Newbury, situated on East High Street comprising about thirty acres of land with the dwelling house and all other buildings thereon, said land being bounded . . ."

Exceptions to the admission of certain testimony of the witnesses Perkins and Little are described in the opinion.

The defendants asked the judge to instruct the jury as follows:

"If the plaintiff and his father entered into the alleged agreement of 1895, the written contract which they entered into in 1901 was a rescission of the earlier contract, and the plaintiff is not entitled to recover."

The judge refused to give this instruction and the defendants excepted. The judge, under instructions appropriate and correct if the instruction requested was refused properly, submitted to the jury the question, whether upon all the evidence in the case

the parties had rescinded the agreement declared on. The defendants contended that upon all the evidence in the case they were entitled as a matter of law to the instruction requested.

An exception in relation to the measure of damages is described in the opinion.

The jury returned a verdict for the plaintiff in the sum of $9,354; and the defendants alleged exceptions.

*B. B. Jones,* (*E. Foss* with him,) for the defendants.

*R. E. Burke,* for the plaintiff.

RUGG, C. J. This is an action to recover damages for the breach of a contract in writing between the plaintiff and his father, dated December 4, 1895, whereby the latter promised to give to the plaintiff certain property "in consideration that he remain on the farm and manage the same for me in my old age." The issues raised at the trial were the genuineness of the alleged signature of the father to the contract, rescission and the measure of damages. The father was a farmer in Newbury who died testate in January, 1913, survived by five sons and two daughters, and grandchildren.

1. A neighbor named Perkins was permitted to testify that in his opinion the signature of the testator to the contract of 1895 was genuine. He testified that he had seen his signature, but not often, and had seen him write his signature "once perhaps;" that he had testified at a previous hearing that in his opinion the signature was genuine but was unable to identify the paper then before him. This was all that he would say as to his qualification. At this time no standard of the handwriting of the deceased was in evidence.

It is the general rule that opinion evidence from one having no special qualifications by experience or study is not admissible. Exceptions to this rule exist where the facts about which the witness is asked to express an opinion are such as may be comprehended by persons of ordinary capacity and cannot be reproduced and described to the jury precisely as they appeared to the witness at the time of the event. The exception is founded on practical necessity in the administration of justice, where matters as to which in the common affairs of life such expressions of opinion convey definite conceptions of actual facts, and where otherwise evidence might be difficult or impossible to obtain. The

exception comprehends a wide range of subjects. Exemplifications are found in proof of identity of persons and things, of likeness of sound, of distance, speed, weight and age, where the conclusion drawn from things seen or heard may be reasonable, accurate and reliable and yet not susceptible of being reproduced by verbal description. It was said by way of illustration in the thorough and full discussion of this general subject in *Commonwealth* v. *Sturtivant*, 117 Mass. 122, at page 133: "Every person is competent to express an opinion on a question of identity as applied to persons, things, animals or handwriting." It is plain, from the connection in which that sentence occurs in the opinion, that it was not intended to lay down an unvarying rule that everybody called as a witness might under all circumstances testify whether, in his opinion, a disputed signature was genuine. It presupposed that there was some recognized necessity for the admission of such testimony. Where, for instance, the point in controversy is whether a lost document was in the handwriting of a certain person, anybody familiar with that person's handwriting may testify, although he pretends to no skill in the matter. *State* v. *Shinborn*, 46 N. H. 497. So also, where one has considerable familiarity with the signature or handwriting of a person growing out of numerous observations, he may give his opinion even though unable to read or write. *Foye* v. *Patch*, 132 Mass. 105, 108.

Where undoubted standards of handwriting, as well as the questioned signature, are before the jury, there is no occasion for the testimony of one who is neither an expert nor possessed of considerable familiarity with the handwriting of the person whose signature is under examination. The opinion of the jury under such circumstances is quite as good as that of the witness of ordinary experience who has no particular acquaintance with the genuine handwriting. There is, under such circumstances, no occasion for the opinion of the outsider of only ordinary intelligence. *Whalen* v. *Rosnosky*, 195 Mass. 545. *Commonwealth* v. *Tucker*, 189 Mass. 457, 486.

It seems to us that the testimony of this witness ought not to have been admitted. But this is one of the cases where much must be left to the discretion of the presiding judge in deciding in the first instance upon the qualification of a witness. His decision

will be sustained unless it plainly appears to have been unwarranted. *Nunes* v. *Perry,* 113 Mass. 274, 276. The witness does not appear to have been of such commanding distinction, position or influence that his opinion would have unusually persuasive force with the jury. There was abundant other testimony on this point, from numerous witnesses on each side, as to the admissibility of which there is no contention. There was discussion in the presence of the jury upon the competency of this witness. He himself expressed doubt as to his testimony being of any value. The judge received it with evident reluctance and with careful warning that the witness' lack of familiarity with unquestioned signatures was to be considered in passing upon the weight to be given to the evidence. The case has been tried twice. In view of all these conditions, with some hesitation we are brought to the conclusion that, although the evidence was admitted improperly, that error has not injuriously affected the substantial rights of the defendants, and that therefore there ought not to be another trial on this ground. St. 1913, c. 716, § 1.

The witness Little, according to the record, had greater familiarity with the signature of the deceased than did Perkins. It would have been a wiser exercise of discretion not to permit him to testify; but the exception hardly can be sustained.

2. It is contended that as matter of law the agreement of 1895 was rescinded. That contention depends in part upon another agreement in writing, signed by the plaintiff and his father, in these words: "Newbury, Mass., February 13, 1901. Agreement between James Noyes and Elbridge Noyes for one year from January 1, 1901. Elbridge Noyes shall receive for services, carrying milk, and general farm work the sum of nine dollars per week. Specified, Elbridge Noyes shall render an account of money received from milk and other farm produce once a month and also receive his payment in full for services rendered." Contemporaneously the plaintiff gave a receipt dated back to January 1, 1901, of this tenor: "Received from James Noyes $200 in full for all demands to this date. $200."

The evidence was not in harmony as to the circumstances which led to the making of this agreement and the giving of the receipt. The father died on January 1, 1913. After the funeral of the father, his children gathered at his former home to hear the will read. By

its terms the homestead was given to a brother of the plaintiff and the Knight and Highfield pastures and stock and tools were given in equal shares to the plaintiff and that brother. Under the agreement of 1895 all these were promised to the plaintiff. Certain other property was given to the plaintiff by the will. The plaintiff then said nothing about his agreement of 1895, but remonstrated with a brother who expressed dissatisfaction with the will. Subsequently in a contest over the will he aided the executors. He said nothing about his agreement until April, 1914. He presented a bill against the estate for a small amount, saying nothing about the 1895 contract. These and perhaps other acts are persuasive factors in support of the contention that the agreement in suit had been rescinded. But as to all of them the plaintiff offered explanation. It was not disputed that the plaintiff received some compensation from his father for work on the farm all the time after 1895. The papers of 1901 may have been found to relate to that subject alone. Moreover, they were signed in the presence of other members of the family whom the father desired, according to some of the evidence, to keep in ignorance of the 1895 agreement. It was not inconsistent with the contract of 1895 that the plaintiff should continue to receive pay for work actually performed by him. The farm was a small one and it could not have been contemplated that its management would take all the plaintiff's time. He was a young man with a family and he would be expected to work. Subsequent stipulations as to his compensation and receipts for pay cannot be held as matter of law to abrogate the 1895 agreement. The plaintiff's conduct respecting the will and his delay in presenting his contract were said by him to be due to the fact that the contract had become mislaid and was found later between the leaves of a magazine.

Waiver or rescission of an agreement is usually a question of fact. Where various transactions are involved, where testimony is conflicting and diverse inferences may be drawn from conduct, it ordinarily cannot be ruled as matter of law that a contract has been abrogated. *Fox* v. *Harding,* 7 Cush. 516, 520. *O'Shea* v. *Vaughn,* 201 Mass. 412. *Tapley* v. *Thayer-Osborne Shoe Co.* 221 Mass. 166. Giving due weight to all the evidence, it cannot be said here that as matter of law there has been waiver or rescission.

3. Whether the plaintiff furnished the consideration for the

father's promise mentioned in the 1895 contract by managing the farm also was a question of fact. While the father was vigorous almost up to the time of his decease at the age of about eighty-nine, he was about seventy-two years of age at the time that contract was made. It may have been made by him in view of anticipated infirmities of old age which never were quite realized. There was testimony tending to show that the plaintiff performed such service of management as naturally would fall to his charge in view of his father's vitality and years. The son's readiness to carry the entire burden if the necessity for it arose, together with actually doing all that his father was willing to leave to him, may have been found to be the consideration required by the contract.

4. The defendants requested a ruling that the measure of damages, if the plaintiff was found entitled to recover, was the difference between the value of the property described in the contract of 1895 at the time of the testator's death and the value on the same date of the property devised to the plaintiff by the father's will, which included certain property not named in the contract. This request was refused and the jury were instructed that the measure of damages was the difference between the value of the property described in the contract and the value of that portion of the same property which the plaintiff took under the will. In this there was no error. There was a general direction in the will to pay all the testator's debts. This in effect made all the legacies conditioned upon a payment of the debts. Where there is no statement in the will that a legacy or devise is in payment of a debt in whole or in part, the general rule is that the testamentary gift is to be regarded as a benefaction and not as payment of the debt. *Smith* v. *Smith*, 1 Allen, 129. The plaintiff's claim for breach of contract was in the nature of a debt. The damages were the value of the property promised. The only matter in diminution of those damages was the partial performance by the testator by the gift in the will of a part of the property promised in the contract.

5. The defendants urge that they should be granted a new trial on the ground that the plaintiff, having accepted benefits under the will, is now barred from setting up a claim which will frustrate the testator's intent as expressed in other parts of the will. There

is ground for the contention that the estate of the testator is such that all other legacies and devises hardly can take effect according to the tenor of the will if the plaintiff is paid in full for his present claim. The testator by his will disposed to other persons by specific devise and bequest of some of the estate which, according to the contract of 1895, he had promised to give to the plaintiff, and to which possibly the plaintiff by seasonable suit might have secured title through specific performance. The doctrine of election in equity is well established in this Commonwealth. It was stated by Chief Justice Shaw in *Hyde* v. *Baldwin,* 17 Pick. 303, at page 308, in these words: "if any person shall take any beneficial interest under a will, he shall be held thereby to confirm and ratify every other part of the will, or in other words, a man shall not take any beneficial interest under a will, and at the same time set up any right or claim of his own, even if otherwise legal and well founded, which shall defeat, or in any way prevent the full effect and operation of every part of the will." *Smith* v. *Wells,* 134 Mass. 11. *Tyler* v. *Wheeler,* 160 Mass. 206, 209.

There is color for the suggestion that the doctrine of election is applicable to the case at bar, although, as the case has not been tried upon that issue, it is not certain that all the material facts are now disclosed. But that contention was not presented at the trial. It was not raised by the answer. There was no request for instructions upon the point. It is introduced for the first time at the argument in this court. It is not within the scope of any general requests for rulings addressed to the trial judge.

It is not necessary now to decide whether, in cases where it appears to be necessary to prevent a miscarriage of justice, a decisive or pertinent point not theretofore raised may be acted on by this court in order to accomplish a right result in accordance with the law. *Slater* v. *Rawson,* 1 Met. 450. *Lyon* v. *Prouty,* 154 Mass. 488. *Kenerson* v. *Colgan,* 164 Mass. 166. *King* v. *Nichols,* 138 Mass. 18. *Frost* v. *Courtis,* 172 Mass. 401. *Grebenstein* v. *Stone & Webster Engineering Corp.* 205 Mass. 431. *Bond* v. *Bond,* 7 Allen, 1, 6. *Parrot* v. *Mexican Central Railway,* 207 Mass. 184. See *Hanley* v. *Eastern Steamship Corp.* 221 Mass. 125, 135. This is not a case for the application of such a principle. There have been two trials before a jury. Whether the failure hitherto to suggest the doctrine of election was due to mistake, oversight, strategy

of trial, a feeling that it was inconsistent with the theory of forgery of the 1895 instrument on which the defence at those trials chiefly was conducted, or to other causes, does not appear on this record.

Whether the defendants, under all the circumstances, ought to be allowed now to plead that matter and to have another chance to try the case on this new ground, depends upon factors which cannot be determined on these exceptions. That is a question to be decided by the Superior Court where the trial occurred rather than by this court.

The defendants, before the entry of final judgment in the Superior Court, have a right to move there for a new trial on the ground "that, by mistake of parties or counsel, . . . a question of fact which is essential to the determination of the rights of the parties has not been tried." *West* v. *Platt*, 124 Mass. 353. *Day* v. *Mills*, 213 Mass. 585, 587.

*Exceptions overruled.*