## THE PILOT BOY.

(*District Court, D. Maryland.* February 9, 1885.)

**1. EXCURSION BOATS—CARRIERS OF PASSENGERS—DUTY TO PASSENGERS.**

The owners of excursion boats used for night excursions are bound to use proper precautions to guard against the natural mistakes of passengers while on board.

**2. SAME—NEGLECT TO SUFFICIENTLY LIGHT A STAIR-WAY.**

Where there was an open door-way from which steep stairs descended to the hold, which was in such a location that it was likely to be mistaken by a passenger for the stairs which ascended to the upper deck, *held*, that the owners of the boat were guilty of negligence in not having it so effectually lighted as to warn a passenger making such a mistake as soon as he faced, and was about to step into the opening.

In Admiralty.

*A. Stirling Pennington*, for libelant.

*H. V. D. Johns*, for respondent.

MORRIS, J. This is a libel *in rem* instituted by a passenger who received injuries from falling down a stair-way on the steam-boat Pilot Boy while on an evening excursion from Baltimore to Keller's Pavilion, in June, 1884. There is some conflict of testimony with regard to whether or not the libelant was under the influence of drink at the time of the accident. I take it that even on such an excursion as this, and with a bar on board, the presumption still remains that the excursionist was sober, and, aided by that presumption, I think the weight of evidence is decidedly with the libelant. The account given by the libelant and his companion of what they had done during the afternoon and while on board is quite inconsistent with his having had enough drink to affect his conduct or his care for his own safety. I find the fact to be that the libelant was sober.

On the Pilot Boy there is on the forward part of the main-deck a structure, in the center of the ship, containing on one side a door-way and stairs leading up to the upper deck, and on the opposite side containing a door-way and stairs leading down to the hold. There is across the whole deck, and extending from each side of this structure to the port and starboard edges of the boat, a partition or bulkhead, with an entrance door on each side. Directly by the entrance door on the port side there is the door-way and stairs ascending to the upper deck, and similarly placed, directly by the entrance door on the starboard side, there is the door-way and stairs descending into the hold. The account of the accident, given by the libelant, is that he was coming from the stern of the boat along the starboard alleyway, intending to go up again onto the upper deck, where he had before been sitting, and thinking that the stairs on both sides lead to the upper deck, he stepped into the starboard door-way, which was open, and the place being entirely dark, and not finding the ascending steps, he fell down to the bottom of the steep descending stairs,

and was injured. It is admitted that the door was fastened open, and, unquestionably, if the opening was not sufficiently lighted, it was in that location a dangerous opening; so that I think the case turns, in great measure, on the question whether the lighting was sufficient for such a place on an excursion boat. There was a bright light with a reflector, fastened against the after-most side of the structure and in the center of the boat. But this was not against the side of the structure in which this door-way was, but at right angles with it and around the corner from it. Obviously, this light did not serve to illuminate the door-way in question. There were lights in the bar, some distance aft, and on the opposite side of the alley-way, which ran fore and aft, and there was a light of some sort on the opposite side of the alley-way, say eight to ten feet distant from the door-way, but not placed directly opposite to it.

There is a conflict of testimony as to whether there was a light in the hold at the foot of the stairs. The libelant says there was no light at all in the hold. The witnesses of the steam-boat say that there was usually placed on a bench near the foot of the stairs a small light for the use of the firemen who were obliged to use this stair-way, and who were the only persons entitled to use it. If this light was there, it was such a light as would very dimly illuminate the stair-way, and as there was no fixed place for it, it may have been placed well towards the after-end of the bench. Since the hearing I have visited the steam-boat, and feel quite sure that I now understand the location of the doorway and its surroundings. It is plain that from its position an ordinary passenger might in the night-time readily suppose that this door-way was an opening leading to the upper deck, and the question to be determined is, was the lighting sufficient to warn a person of ordinary prudence, who was acting under that reasonable impression, what its real character was in time to prevent his stepping into it? Undoubtedly it was lighted sufficiently for men accustomed to the boat, for they know its real character, and would need but very little light; but I take the law to be that owners of excursion boats carrying pleasure-seekers on a night excursion are bound to guard against the natural mistakes of such passengers. The law is that carriers of passengers are not liable, if injuries happen from sheer accident or misfortune, where there is no negligence or fault, or where no reasonable caution, foresight, or judgment would have prevented the injury; but the carrier is liable for the smallest negligence of himself or his servants. I think it was a natural mistake for any landsman to make, to suppose that this opening led to the upper deck, and I think that when it was left open the lighting should have been sufficient to give instant warning to such a person of his mistake. For a boat carrying a crowd of excursionists at night, I do not think the lights on the main deck were sufficient to give such warning, and I do not think the dim light placed on the bench in the hold near the foot of the stairs made them sufficient. There should have been a

good light inside the opening, placed high enough to catch the eye of the passenger as soon as he faced the opening. It may be said that in a narrow opening with steps leading directly down, and with the ascending steps from the opposite side close overhead, and inclining towards the opening, such lighting would be difficult. This may be so. I can appreciate the difficulty, and no doubt the safer and better plan would be to have some obstruction across the door-way to check any one attempting to enter.

The boat's officers state that the door must be kept fastened open to give ventilation to the firemen in the hold, and this being so, the surest precaution against the dangerous mistakes of excursionists at night would seem to be to put some physical obstruction across it, and this would be more effectual than any amount of lighting. I have heard and considered with attention the testimony of the experienced steam-boat men who were called as experts, and who testified that in their judgment the precautions used were sufficient, and in holding that they were not, I do not, of course, mean to assume that the court, by any sort of judicial legislation, may declare that steam-boats must be constructed and furnished according to plans which the court may think most judicious, but I do consider that the testimony of nautical men as to what is sufficient to prevent such accidents must be received with some allowance, for this reason, that it is difficult for seafaring men to comprehend how stupid an ordinary landsman or excursionist is with regard to the construction of a boat, and how liable he is to become confused with regard to the location of the stair-ways leading from one deck to another.

Now, with respect to a boat used for night excursions, and particularly one which has a bar on board, and is intended for more or less merry-making, the rules of law governing carriers of passengers should not be relaxed, and they should be required to guard against the natural and general ignorance and mistakes of those they invite on board as passengers. In this case, as the neglect for which I pronounce the steam-boat in fault is not one of gross or willful negligence, the recovery should be strictly confined to a reasonable compensation. The libelant proved no actual loss of earnings or expenditures for medical attendance. He was laid up in the city hospital nine weeks, and was on crutches two months,—say eighteen weeks in all.

A decree may be drawn for $300 and costs.