CHARLES A. HANLEY, administrator, *vs.* EASTERN STEAMSHIP CORPORATION.

SAME *vs.* SAME.

Suffolk.    March 1, 1915. — May 20, 1915.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Practice, Civil,* Venue.    *Negligence,* Steamship company, Causing death.    *Carrier,* Of passengers.    *Ship.*

Under St. 1904, c. 320, which provides that an action to recover for injury or damage received by reason of negligence "shall be brought in the county in which the plaintiff lives or has his usual place of business, or in the county in which the alleged injury or damage was received," an action by an administrator for injuries received by the plaintiff's intestate by reason of the defendant's negligence cannot be maintained in the county in which the plaintiff is employed as the manager of a department store and in which the plaintiff's intestate was employed as the assistant manager of the same store, if the plaintiff lives and his intestate lived in another county and the intestate's injuries were received in still a third county.

If a passenger on an ocean going steamship has been walking in the evening upon a deck where passengers are permitted to go and where a space from three to five

feet wide between a life boat and a life raft has been left open and unguarded, and if when such passenger is putting down a camp stool that he has in his hand the vessel gives a lurch and he falls overboard through the open space, he is not negligent as matter of law, because he has the right to assume that during the voyage no place on the vessel where passengers are allowed to go will be left entirely without some guard or a rail at the edge of the deck to prevent a passenger from falling overboard; and it cannot be said as matter of law that such a passenger assumes the risk of such an injury.

The regulations of the United States requiring ocean going vessels to have life boats so placed and fitted that they can be launched safely in less than two minutes do not absolve the owner of such a vessel, when carrying passengers and permitting them to use the deck where the life boats are, from his duty to maintain reasonable guard chains between the ends of two life boats to prevent passengers from falling overboard in the open space between the boats, or, if the only kind of guard consistent with the federal regulations is an insecure one, from his duty to exclude passengers from the immediate neighborhood of the life boats.

When an ocean going vessel is carrying several hundred passengers and on a deck to which the passengers are admitted the open space between two life boats near the edge of the deck is guarded only by a chain which is unfastened easily, it is the duty of the owner of the vessel to make some sort of inspection to protect passengers against the danger likely to follow if the guard chain becomes unfastened; and, if under such circumstances a passenger is injured by falling overboard through the open space between the life boats, in an action to recover for his injuries it is a question for the jury whether such reasonable inspection as the owner ought to have exercised would have revealed the fact that the guard chain had become unfastened.

Without deciding whether at the trial of the action above described a special question to the jury "Was the defendant negligent in failing properly to guard the place where the accident happened?" was objectionable as assuming that the defendant failed to guard the place and merely asking the jury whether such failure was negligence, it was *said*, that it would have been better to have put the question in the form "Did the defendant negligently fail to guard the place where the accident happened?" or in some other form which would have avoided the possible implication that the place was unguarded and that the only point to be decided was whether leaving it unguarded was a negligent act.

Where, in an action by an administrator against a corporation operating a steamship line for causing the death of the plaintiff's intestate by negligently failing to guard the edge of the deck of a vessel of the defendant on which the intestate was a passenger so that he fell overboard and was drowned, the trial proceeded on the theory that the defendant's liability depended upon St. 1907, c. 375, which has no application to the liability of a common carrier of passengers, whereas the defendant's liability was governed wholly by R. L. c. 70, § 6, but no specific exception to this error in procedure was taken at the trial, this court did not find it necessary to determine whether a new trial would have been ordered for this reason alone; because an exception was sustained on another ground which required a new trial.

Where an action by an administrator against a corporation operating a steamship line for causing the death of a passenger was tried erroneously as if the defendant's liability depended on St. 1907, c. 375, whereas that statute had no application and the defendant's liability was governed wholly by R. L. c. 70, § 6,

it was found not to be necessary to decide whether the questions of the negligence of the defendant in its corporate capacity and of the gross negligence or unfitness of its servants or agents were raised by the defendant's requests for instructions in general terms, although these questions were not thought of by the judge or the counsel at the trial; because there was to be a new trial in which the case would be presented upon the proper issues.

TWO ACTIONS OF TORT against the Eastern Steamship Corporation, a corporation organized under the laws of the State of Maine and having a usual place of business in Boston, by the administrator of the estate of William Hanley, the first action for the death of the plaintiff's intestate alleged to have been caused by the negligence of the defendant and of its servants and agents by reason of which the intestate at about half past nine o'clock on the evening of July 30, 1910, fell from a steamship of the defendant and was drowned, and the second action for the conscious suffering of the plaintiff's intestate immediately preceding his death. Writs in the county of Suffolk dated February 15, 1911.

The amended declaration in each of the cases contained five counts, which were alike in the two cases as to the kind of negligence alleged. In each case the first count alleged negligence in failing to guard properly a dangerous portion of the defendant's steamship; the second count alleged negligence in failing properly to inspect the steamship when a proper inspection would have revealed an unguarded perilous way on the steamship; the third count alleged negligence in failing to light the steamship so as to disclose the dangerous character of certain passageways; the fourth count alleged negligence in failing to provide against the removing or the becoming unfastened of certain guard chains; and the fifth count alleged negligence in failing to provide suitable appliances for the rescue of passengers thrown or falling overboard.

In each of the cases the defendant appeared specially and filed a motion to dismiss the case for want of jurisdiction for the reason that the plaintiff's intestate, at the time of the accident for which the action was brought, lived in Brookline in the county of Norfolk and had no usual place of business in the county of Suffolk, and that the accident for which the action was brought occurred in the county of Essex; also that the intestate's administrator, who brought the action, at the time of the accident and at the time of the bringing of the action, lived in Brookline in the county of Norfolk and had no usual place of business in the county of Suffolk.

The motions were heard by *Stevens, J.,* upon an agreed statement of facts, which was as follows: At the time of the accident for which the actions were brought the plaintiff's intestate lived in Brookline in the county of Norfolk and was and had been for four years employed as assistant manager of the rug department in the store of Henry Siegel and Company in Boston in the county of Suffolk; that otherwise he had no business in the county of Suffolk; that the administrator who brought the actions, at the time of the accident for which the actions were brought and at the time of the bringing of the actions, lived in Brookline in the county of Norfolk and was employed for five years previous to the accident as manager of the rug department in the store of Henry Siegel and Company in Boston in the county of Suffolk, and that otherwise he had no business in the county of Suffolk. It was agreed that the accident that caused the injuries and death on account of which the actions were brought occurred in Essex County.

The defendant asked the judge to make the following rulings:

"1. That the plaintiff's intestate at the time of the accident did not live or have a usual place of business in the county of Suffolk.

"2. That the administrator at the time of the accident and at the time of the beginning of the action did not live or have a usual place of business in said county of Suffolk.

"3. That the fact that the intestate was employed as assistant manager of the rug department of the store of Henry Siegel Company in Boston in the county of Suffolk did not constitute a usual place of business of the intestate within the meaning of the law in the county of Suffolk.

"4. That the fact that the administrator was employed as manager of the rug department in the store of Henry Siegel Company in Boston, in the county of Suffolk, did not constitute a usual place of business of the administrator in the county of Suffolk.

"5. That as a matter of law the defendant's motion to dismiss on the agreed statement of facts must be allowed."

The judge refused to make any of these rulings and denied the motion to dismiss. The defendant appealed. Afterwards exceptions of the defendant to the refusal to make the rulings and to the order denying the motion were allowed by the judge at the

same time that he allowed the exceptions taken at the trial of the cases.

St. 1904, c. 320, added to R. L. c. 167, § 6, the following provision: "An action against a city, town, person, or corporation to recover for injury or damage received in this Commonwealth by reason of negligence other than that relating to such defect, want of repair or insufficient railing, shall be brought in the county in which the plaintiff lives or has his usual place of business, or in the county in which the alleged injury or damage was received."

R. L. c. 167, § 10, is as follows: "A transitory action by or against an executor or administrator may be brought in any county in which it might have been brought by or against the testator or intestate at the time of his decease."

Later the cases were tried together before *Stevens*, J. The evidence is described in the opinion. At the close of the evidence the defendant asked the judge to rule that on all the evidence the plaintiff was not entitled to recover in either of the cases and to order verdicts for the defendant. The judge refused to do this, and the defendant excepted. The defendant then asked the judge to make forty-three rulings, some of which raised the questions that are stated in the opinion and the rest of which were disposed of by the judge's charge. The judge refused to make any of these rulings except as embodied in his charge and submitted to the jury certain special questions, which with the answers of the jury were as follows:

"1. Was the defendant negligent in failing properly to guard the place where the accident happened?" The jury answered, "Yes."

"2. Was the defendant guilty of negligence in failing to inspect the boat at the place where the accident happened?" The jury answered, "Yes."

"4. Was the defendant guilty of negligence in failing to provide against the removing or becoming unfastened of the guard chains where the plaintiff's intestate fell off the boat?" The jury answered, "Yes."

The defendant objected before the charge to the submission by the judge to the jury of each of the questions numbered respectfully 1, 2 and 4, for the reason that there was no evidence that the defendant had failed properly to guard the place where the acci-

dent happened, and there was no evidence of any negligence on the part of the defendant with respect to the place where the accident happened, and for the reason that the question in form as framed assumed that the defendant had failed properly to guard the place where the accident happened and simply called upon the jury to answer whether or not such assumed failure properly to guard the place was negligence, and for the reason that the submission of each of the questions by the judge to the jury was, both on account of its form and substance, prejudicial to the defendant.

The judge stated that he would instruct the jury fully in his charge in relation to these questions, and the defendant excepted to the submission by the judge to the jury of each of the questions.

The defendant excepted to so much of the charge of the judge as stated that it was the duty of a common carrier to protect its passengers from harm so far as harm reasonably could be anticipated or guarded against.

The jury returned a verdict for the plaintiff in each of the cases, in the first case (for causing death) in the sum of $5,000, and in the second case (for conscious suffering) in the sum of $1,500. The defendant alleged exceptions, including the exceptions taken to the refusal of the rulings requested in regard to the motion to dismiss and to the order denying that motion.

*J. T. Hughes,* for the defendant.

*R. Gallagher,* (*C. D. Driscoll* with him,) for the plaintiff.

RUGG, C. J.    These are two actions of tort.    In one the plaintiff seeks to recover damages for the conscious suffering and in the other the statutory penalty for the death of his intestate, alleged to have been caused by the defendant.    The intestate lost his life in connection with being a passenger upon the Bay State, a steamship operated by the defendant between Boston and Portland.

1.    A question as to the proper venue of the actions lies at the threshold.    It is agreed that the damage and injury were received in Essex County, that the plaintiff and his intestate lived in Norfolk County and were employed as the manager and the assistant manager respectively in one of the departments of a large store in Suffolk County.    Whether the actions rightly were brought in Suffolk County depends upon the meaning of "usual place of business" in St. 1904, c. 320, amending R. L. c. 167, § 6, whereby it is provided that actions like these "shall be brought in the county in

which the plaintiff lives or has his usual place of business, or in the county in which the alleged injury or damage was received."

In determining the meaning of the statute in this respect, its history is important.  St. 1854, c. 322, first permitted transitory actions to be brought in the county where either party had his "usual place of business," but confined its operation to cases where all the parties were residents of the Commonwealth.  St. 1856, c. 70, provided that where the plaintiff in a transitory action was a non-resident, the action might be brought in the county in which the defendant lived, or "principally transacts his business, or follows his trade or calling, if he resides in this Commonwealth." But it did not affect St. 1854, c. 322.  These two statutes both continued in force until 1860, when they were combined in c. 123, § 1 of the General Statutes, in these words : "Transitory actions, except in cases in which it is otherwise provided, if any one of the parties lives in the State, shall be brought in the county where some one of them lives or has his usual place of business."  The reference to "trade or calling" contained in St. 1856, c. 70, was omitted.  The commissioners on revision, in their note to this section, give no information as to the purpose or intent of this change, although referring to another change made in the section. Interpreting the law as it stood from 1856 until the enactment of the General Statutes, it is to be observed that, in order to give full force and effect to all the words used in St. 1856, c. 70, as compared with St. 1854, c. 322, it must be presumed that the Legislature intended for the later act a broader scope than for the earlier. It is a well recognized rule in the interpretation of statutes that, where reasonably possible, full force and effect should be given all the words used by the Legislature.  Previous to 1854 transitory actions could be brought only in the county in which one of the parties had his residence.  When the venue was extended in 1854, it included the county of the usual place of business of either, where both parties resided within the Commonwealth. It may well have been thought in 1856, when the venue for non-resident plaintiffs was extended, that it might include not only the residence and the place of business, but also the place of employment, of resident defendants.  If the question had arisen in 1859, it cannot well be doubted that the court would have held that "usual place of business" as used in St. 1854, c. 322, had a more

restricted signification than the words, "In which he principally transacts his business, or follows his trade or calling" of St. 1856, c. 70. The rational explanation of the action of the Legislature in enacting the General Statutes touching this subject, by employing only the words of the statute of 1854, and omitting entirely those contained in the statute of 1856, appears to us to be that it was intended to recur to the meaning of the words of the earlier statute and discard the broader reference contained in the later statute. This is something more than a mere verbal change in the revision of a statute, which would not affect its meaning, *Shawmut Commercial Paper Co.* v. *Brigham*, 211 Mass. 72, 74, and reaches to a modification of the substance. This interpretation is confirmed by St. 1904, c. 320, which governs the venue of these actions. The purpose of that statute, as was pointed out in *Sandler* v. *Boston Elevated Railway*, 218 Mass. 333, was to relieve the courts of Suffolk County, in which many defendants in actions of negligence have a usual place of business, from the trial of actions where the alleged act of negligence happened in another county and the plaintiff resided or had his usual place of business in another county. Its manifest design was to diminish the number of trials which theretofore could be had in Suffolk County, and thus to save to that county what was felt to be a disproportionate expense in the maintenance of jury trials. It should be interpreted, so far as reasonably practicable, in such way as to further this design.

The words, "usual place of business," apart from special circumstances throwing light upon their meaning, may be given a comprehensive meaning, *Goddard* v. *Chaffee*, 2 Allen, 395, and have been held to include the usual place of labor or employment in the service of another,* although there are contrary decisions.† It follows that the words used in our statute, in the light of its history, do not include a place where one pursues a "trade or calling." The work of the plaintiff and the intestate in a de-

---

* *Lewis* v. *Davis*, 8 Daly, 185. *Burke* v. *Burke*, 58 N. Y. Supp. 676. *Brassack* v. *Interborough Rapid Transit Co.* 121 N. Y. Supp. 215. *Coker* v. *State*, 12 Ga. App. 425. *Idelett* v. *State*, 81 S. E. Rep. 379. *In re Belcher*, Fed. Cas. 1237. *In re Bailey*, Fed. Cas. 753. *Collector of Taxes of Boston* v. *New England Trust Co. post*, 384.

† *In re Lipphart*, 201 Fed. Rep. 103. *In re Magie*, Fed. Cas. 8951.

partment store comes rather within the description of "trade or calling" than "place of business." It is employment as distinguished from business. Therefore the venue of these actions was laid improperly in Suffolk County. They should have been brought either in the county of the residence, which was Norfolk, or where the alleged act of negligence occurred, which was Essex.

As under R. L. 167, § 14, the actions may be transferred to the proper county and there tried again, other questions now fairly presented and likely to arise in substance at a new trial are considered.

2. There was evidence tending to show that there was, on a deck of the steamship where passengers were permitted to go, a space, variously estimated at from three to five feet between a life boat on one side and a life raft on the other, where there was no rail, guard or protection to prevent a passenger from walking, being thrown or falling over the ship's side to the water; that, as the plaintiff's intestate, walking along at about half past nine o'clock in the evening with a camp stool in his hand, was in the act of putting it down, the vessel gave a lurch and he fell overboard. If this evidence was believed, it was sufficient to support a finding of due care. It well may be found that a passenger upon an ocean going steamship, during the voyage, may assume that no place where he is allowed to go will be left entirely without some safeguard to prevent a passenger from falling overboard.

3. The manner of the accident was not left wholly to surmise or conjecture. If the testimony just narrated were taken at its full value, it reasonably might have been thought to show that the plaintiff's intestate was caused to fall overboard by the lurch of the ship and not by his own volition or lack of attention.

4. It cannot be said as matter of law that he assumed the risk of such an injury. If the jury believed that there was no adequate cause for him to know that there was no guard or protection, then there was no room for the operation of the maxim *volenti non fit injuria.* Even though it may have been obvious that there was no chain or guard stretching over the space between the life boat and the raft, it might still have been reasonable to assume that there was a rail or other protection at the edge of the deck.

5. It has been earnestly argued in behalf of the defendant that because of the regulations of the United States requiring life boats

to be so placed and fitted that they can be launched safely in less than two minutes, it should have been ruled that there could be no recovery on the fourth count of the declaration, which alleged the negligence of the defendant to have consisted in failing to provide against the removal or unfastening of chains, which it appeared were provided commonly to protect the space between the life boat and the raft. It contends that nothing more permanent than chains which would unfasten easily could have been used at this place. But it could not have been ruled as matter of law that this was the only practicable protection. What was a sufficient and appropriate guard was a matter to be determined upon all the evidence. If the only kind of guard, consistent with the federal regulation as to launching the life boats, was an insecure one, then it might have been found that passengers should have been excluded from the immediate neighborhood.

6. The jury rightly were instructed that the only negligence for which the defendant could be held responsible was that of its servants or agents. *Joy* v. *Winnisimmet Co.* 114 Mass. 63. But there were several hundred passengers on this boat and necessarily some degree of inspection was required, in the exercise of the high responsibility resting upon the defendant as a common carrier, to see that the various parts and appointments of the vessel remained safe and were not put out of place or rendered dangerous by such ignorant or stupid persons as commonly might be anticipated among so large a number of passengers. The defendant was not obliged to act on the theory that passengers wilfully would remove guards placed for their protection; but, if the peril that was disclosed by the accident was one likely to occur, then the defendant would be required to provide against it, so far as reasonably possible. It properly was left to the jury to determine whether such reasonable inspection as the defendant ought to have exercised, in view of the number of passengers carried and the nature of the particular place and its fittings, and the danger likely to follow from its becoming unguarded, would have revealed the fact that the guard chain had become unfastened. *Peverly* v. *Boston*, 136 Mass. 366. *Glennen* v. *Boston Elevated Railway*, 207 Mass. 497. There is nothing inconsistent with this conclusion in *Lyons* v. *Boston Elevated Railway*, 204 Mass. 227. There was evidence that the place where the ac-

cident occurred was without chain or other guard for a period of several hours. This might have been found to have been negligence.

7. The other requests of the defendant not covered by what has been said either were given in substance in the fair and comprehensive charge of the presiding judge, or rightly were refused as being directed to fragmentary or indecisive portions of the evidence.

8. The form of questions submitted to the jury might have been modified so as to overcome the objections urged by the defendant. Without deciding that the exceptions would be sustained on this ground, in view of the accompanying explanation of the judge, it would have been better to have put the question in some such form as this: "Did the defendant negligently fail to guard the place where the accident happened?" or in some other way to have avoided the implication that the place was unguarded and the only point to be decided was whether that was a negligent act.

All that has been said under paragraphs numbered 5 to 8, both inclusive, of this opinion, relates solely to the action for conscious suffering.

9. Manifestly there was a mistrial in the action to recover the penalty for causing the death of the intestate. The trial of that action proceeded on the theory that it was governed by St. 1907, c. 375, which is the general statute imposing a penalty for negligently causing the death of a human being in instances where no other remedy is given. But that statute has no application to a common carrier of passengers. That was decided expressly as to street railways by *Brooks* v. *Fitchburg & Leominster Street Railway*, 200 Mass. 8. It is plain from that decision that the liability of such a common carrier as the defendant for causing the death of a passenger depends wholly upon R. L. c. 70, § 6. See also *Boott Mills* v. *Boston & Maine Railroad*, 218 Mass. 582, 586.

But no exception specifically directed to this procedure was taken at the trial. Since the exceptions are sustained on another ground, it is not necessary to determine whether a new trial would have been ordered now for that reason alone. See *Bond* v. *Bond*, 7 Allen, 1, 6.

Neither is it necessary to decide whether the questions of the negligence of the defendant in its corporate capacity or of the gross

negligence or unfitness of its servants or agents, were raised by some of the defendant's requests for instructions in general terms, although not then thought of. *Parrot* v. *Mexican Central Railway,* 207 Mass. 184, 190. Assuming that these questions are raised upon the present record the rule of damages and the grounds of liability set forth in St. 1907, c. 375, under which the case was tried, are quite different from those established by R. L. c. 70, § 6, under which alone the defendant in law could be held liable. Therefore it appears to be wiser not to decide these points until the case has been tried and the evidence produced with a view to presenting them.

*Exceptions sustained.*