13491, 13492.    KENNEDY *v.* OCEAN STEAMSHIP· CO.;
and *vice versa.*

1. Neither count of the plaintiff's petition was subject to dismissal upon the general demurrer.
2. The renewal of a nonsuited action, where the action would be barred by the statute of limitations but for the pendency of the former action, must in order to avoid being barred, be for substantially the same cause of action, but it need not be a literal copy of the previous one; and where in such renewal the complaint is laid in two counts, while the former action was·laid in one count only, the new action is not barred merely for the reason that in the second count thereof new and additional acts of negligence are set forth which were not contained in the antecedent suit; both the old and the new action being based upon the same transaction, between the same parties, and differing only in the specifications of negligence. That ground of the defendant's de-murrer which invoked the operation of· the statute of limitations was properly overruled. *Cox* v. *Strickland,* 120 *Ga.* 104 (5) (47 S. E. 912, 1 Ann. Cas. 870); *City of Columbus* v. *Anglin,* 120 *Ga.* 785 (5) (48 S. E. 318); *Bowen* v. *Adams,* 129 *Ga.* 688 (2) (59 S. E. 795); *Seaboard Air-Line Ry.* v. *Jackson,* 138 *Ga.* 54 (2) (74 S. E. 775); *Augusta Rail-way Co.* v. *Andrews,* 92 *Ga.* 706 (3) (19 S. E. 713). Nor was there any merit in any of the other grounds of special demurrer.
3. The plaintiff's evidence so tended to support her petition that it was error to award a nonsuit.

     DECIDED FEBRUARY 22, 1923. REHEARING DENIED MARCH 3, 1923.

Action for damages; from Chatham superior court —. Judge Meldrim. January 30, 1922.

Application for certiorari was denied by the Supreme Court.

*David S. Atkinson, Lawrence & Abrahams,* for plaintiff.

*H. W. Johnson,* for defendant.

BELL, J.    On January 29, 1916, Mrs. Kathleen McLendon Kennedy filed a suit against the Ocean Steamship Company for

47

injuries alleged to have been sustained by her on August 27, 1915, while a passenger upon a steamship of the defendant en route from New York to Savannah. The trial of that case resulted in a nonsuit, which was affirmed by this court on December 13, 1917 (*Kennedy* v. *Ocean Steamship Co., 21 Ga. App.* 427, 94 S. E. 583). That suit was in one count only. On February 18, 1918, the suit was renewed. The plaintiff in this suit laid her case in two counts. The first count was almost a verbatim copy of the old suit, and alleged the following: That the defendant is a common carrier of passengers running a line of steamships between Savannah and New York, and that on the date of her injuries " petitioner and her husband were passengers on said Steamship City of St. Louis then and there operated, maintained, and controlled by said defendant, having paid their fare for passage on said boat, and were on said date proceeding on the voyage of said vessel from New York to Savannah." She further alleges as follows:

" 5th. About 3:15 p. m. on said date petitioner in company with other passengers on said vessel was walking along the promenade deck of said vessel. She desired to descend from the promenade deck to the hurricane deck of said vessel about midship, and for this purpose proposed to descend a stairway leading from said promenade deck to the said hurricane deck, the stairway being located, for the purpose of affording methods of ascent and descent, between said floors or decks for the passengers on said vessel.

" 6th. Petitioner's husband preceded her, and, for the purpose of descending from the promenade deck to the hurricane deck of said vessel, used a stairway provided by the defendant for the purpose of ascent and descent between said decks, petitioner following her husband a short distance behind. To the left of this stairway and leading from the hurricane deck to the main deck was maintained another stairway or series of steps. Said stairway leading from the hurricane to the main deck was a continuation of the method of obtaining ingress and egress to and from the main deck to the hurricane and the promenade deck above the same. There was also an opening leading out on the hurricane deck from the landing between the two stairways above described.

" 7th. There were no guards, gates, bars, or signals provided forbidding passengers to use either of said stairways above referred to. Passengers were permitted to use each of said stairways. Said

stairways were generally and commonly used by passengers and members of the crew of said vessel as a method of ingress and egress to and from the main and promenade decks.

" 8th.  The passageway or stairs as aforesaid, and each of them, and the steps thereof, had been covered by the defendant with a metal covering.  Said metal covering had been originally raised or corrugated for the purpose of affording a better footing for persons ascending and descending the same, using the said stairs for methods of communication between said decks.  This corrugation was necessary and proper because of the insecurity of the footing, due to the necessary rolling of the vessel during her voyage, the corrugation furnishing a steadier and more stable footing.

" 9th.  On said 27th day of August, 1915, the metal corrugation of the steps on the stairs leading from the hurricane to the main deck had been allowed to wear off.  By reason thereof the said metal covering and said steps on the passageway referred to were dangerous and ineffective.  The corrugation by constant use had worn down, and the metal covering and stairs had become slick, slippery, and dangerous, having been allowed to remain in use for such length of time that by reason thereof said stairs became worn and smooth instead of corrugated or raised.  A reasonable inspection of said steps would have disclosed said defective condition of the same.

" 10th.  When petitioner attempted to descend said stairs she did not know of the dangerous and defective condition of said metal covering, and used the steps.  She was unaccustomed to the use of stairs of this character and did not know of the dangers incident to its use.

" 11th.  Petitioner's husband descended from the promenade to the hurricane deck and passed out of the opening on the side of said vessel to the main portion of said deck, anticipating that petitioner would follow him.  Petitioner descended from the promenade to the hurricane deck, and, her husband having passed out of her sight and petitioner seeing a second set of steps leading from the hurricane to the main deck, concluded that her husband had descended the second flight of stairs leading from the hurricane to the main deck, and when she reached the second step of said flight of steps in her descent her foot slipped, by reason of the slick,

slippery, and dangerous condition of said steps, and she fell down said flight of steps, sustaining severe and serious injury. Her left leg was broken just above the ankle joint. Her foot and her body sustained serious and permanent injury by reason thereof. She suffered intense pain and was confined to her bed from the date of injury until the 10th day of October, and was unable to walk without crutches until November 1st.

" 12th. Petitioner did not know of the defective condition of said steps when she attempted to descend the same. She had not used the same before, and could not by the exercise of ordinary care have known of said defective condition. There were no signs, gates, bars, or other warning prohibiting or forbidding the use of said steps or warning passengers of the dangers incident to the use, and petitioner was proceeding down said stairs or passageway as she had a right to do, and was in the exercise of all ordinary and reasonable care at the time the injuries above set forth were received by her.

" 13th. Defendant was negligent in the following particulars: (*a*) In failing to provide a safe passage or stairway between the decks or floors of said vessel. (*b*) In maintaining a metal covering on said passage or stairway, the corrugation of which had been allowed to wear so that the same became slick, slippery and dangerous. (*c*) In maintaining a defective passage or stairway between the decks of said vessel. (*d*) In failing to inspect the said metal covering to said passageway and in failing to remove said metal covering after the same became worn. The absence of such inspection is here charged and alleged to be negligence. Such reasonable inspection would have discovered the defect. (*e*) In allowing said metal covering to become worn and in failing to replace the same with a proper metal covering. (*f*) In failing to guard said stairway by blocking the same or by posting notice of the danger in the use of said passageway or steps. (*g*) In failing to warn petitioner of the danger in the use of said steps. (*h*) In not warning petitioner of the slick, slippery, and dangerous condition of said step and steps. (*i*) In not having gates prohibiting passengers from using said steps. (*j*) In not having signs or other written warnings notifying petitioner of the slick, slippery and dangerous condition of said step and steps. (*k*) In not forbidding petitioner, by signs or otherwise, from using said slick,

slippery, and dangerous step or steps. (*l*) Each of said acts of negligence concurred in causing the injuries to plaintiff."

The plaintiff's injuries were described, and damages were claimed in the sum of $6,000.

The second count was in all material respects the same as the first, with additional specifications of negligence.

Each count as amended alleged the filing, pendency, and nonsuit of the former action, by which it was shown that the renewal action was brought within time, unless the second count alleged a new and distinct cause, as is contended by the defendant in one of the grounds of special demurrer. A general demurrer and various special demurrers, including that above referred to, filed by the defendant, were overruled. At the close of the plaintiff's evidence the court awarded a judgment of nonsuit, to which the plaintiff excepted. By a cross-bill of exceptions the defendant excepts to the overruling of its demurrers.

The petition set forth a cause of action. Civil Code (1910), § 2714; *Southern Ry. Co. v. Reeves,* 116 *Ga.* 743 (3) (42 S. E. 1015); 36 Cyc. 320, 334; Steamship City of Panama *v.* Phelps, 101 U. S. 453 (25 L. Ed. 1061, 1064); Hanley *v.* Eastern Steamship Cor., 221 Mass. 125 (109 N. E. 167, Ann. Cas. 1917D, 1034); The Pilot Boy, 23 Fed. 103; *Mandeville Mills* v. *Dale,* 2 *Ga. App.* 607 (1 *b*), 611 (58 S. E. 1060); *Rollestone* v. *Cassirer, 3 Ga. App.* 161 (2) (59 S. E. 442); The Max Morris, 24 Fed. 680. There was no error in overruling any of the special demurrers.

Was the court right in awarding the nonsuit?

It appears that the defendant owned the twin ships " City of Montgomery " and " City of St. Louis," and that the plaintiff had gone from Savannah to New York in the " City of Montgomery," and at the time of her injury was returning on the " City of St. Louis;" that the two ships were in all respects similar, and especially so as to the locations of the decks and stairways in question. Constantine Robinson testified for the plaintiff: " I am an automobile mechanic. I am a member of the firm of Freundt & Robinson. I have been in business since the fall of 1913. Prior to that time, since 1890, I was employed by the Ocean Steamship Company in the engine department. I was one month on the St. Louis, and running on the City of Montgomery for three years. I am familiar with the steps of the St. Louis that lead down from the hurricane

deck to the main deck.   They are wooden steps, very steep, with
metal strips on them.   I do not remember any warning prohibiting
passengers from using those steps on the St. Louis while I was
there.   I cannot say that passengers were permitted to go down
those steps; I have known them to go up and down the steps.
They have been used by passengers on the boat.   I was first as-
sistant engineer.   The City of St. Louis and the City of Mont-
gomery are twin ships and practically similar in every respect, the
same flights of steps are similar.   Passengers used those steps on
the Montgomery.   I cannot say that this was with the knowledge
of the officers of the ship.   The steps lead down to the engine-
room.   Passengers went down there as a matter of curiosity, I
expect.   I have known them to go down there with the permission
of the officers.   I cannot say whether the plaintiff in this case had
permission or not.   There is no way to go from the hurricane deck
to the main deck except by using those steps, except through a
locked door.   There are warnings and notices on the ship prohib-
iting intermediate passengers and steerage passengers from going
to certain parts of the ship. First-class passengers are not prohibited
from the use of any part of the ship by any notice that I know of.
There is no sign or notice prohibiting the use of any portion of the
main deck by first-class passengers.   Picture No. 1, which you show
me, is the entrance from the top deck to the hurricane deck.   Pas-
sengers are permitted to use those steps from the hurricane deck
to the promenade deck.   I have seen first-class passengers on the
main deck from time to time on the City of Montgomery.   I was
on the St. Louis for three trips.   I cannot say positively whether
I saw passengers on the main deck or not.   Most of my time was
spent below and the rest in my room.   I do not remember any
notice or sign prohibiting the use of any portion of the St. Louis
to first-class passengers.

" Picture No. 4, which you show me, is the companion-way lead-
ing from the hurricane deck to the main deck.   On the main deck
to the point where this stairway led, this is the space provided for
a passageway to allow members of the crew to go back and forth.
There is nothing down there for the comfort of passengers,— no
passenger accommodations down there at all.   It is for the use of
the crew and engineers and oilers and others.   The stairs that lead
down to the steerage and intermediate passengers are entirely cut

off from those steps. There are bulk-heads in between and cargo space on the side. These steps have two metal strips on each tread, — I think galvanized iron. I think these are the usual and customary kind of stairs on vessels for crews to get up and down. I have not seen that particular kind of steps except on the St. Louis and Montgomery. The stairway to the engine-room is steeper,— in this respect they differ. In other respects they are practically the same as on other ships. They are steeper than I have seen on any other vessel. I would judge that the distance between the main deck to the hurricane deck floors is eight feet or thereabouts."

E. W. Connor testified: " I am a marine engineer. I have been employed by the Ocean Steamship Company as oiler and engineer, and served on the St. Louis and Montgomery, which are twin ships. I am familiar with the passageway from the promenade deck to the main deck. I used this passageway often. It is the only way to get to the main deck. Passengers on the St. Louis are not prohibited from the use of this flight of steps from the promenade deck to the main deck that I know of, nor from the hurricane deck to the main deck. I have seen passengers use those steps. I was connected with the St. Louis about eight months. I have seen passengers use those steps from the hurricane to the main deck at times. They went there through curiosity. I do not know whether they had permission to go down there or not. Passengers were not prohibited from the use of the main deck. There is no other way to get down to the main deck from the hurricane deck on that ship." " I served eight months on the St. Louis in 1914 and 1915 — the latter part of 1914 and the first part of 1915. I was not there in the latter part of 1915. I do not know whether or not passengers were using those steps in August, 1915. I do not say they were permitted to do so. The place down below is provided for the engine crew. No place is provided for the passengers there. I do not know whether passengers were permitted to use this flight of steps or not while I was there. I have seen them use them. I came back to the St. Louis in 1916."

H. W. Stewart testified: " I live at 304 East 49th Street, Savannah, Georgia. My business is chief engineer. I have been employed by the Ocean Steamship Company in that capacity and served on the St. Louis, and do not remember about the years,— off and on covering about thirty odd years. I am familiar with

the flight of steps that lead from the promenade deck to the hurricane deck and from the hurricane deck to the main deck. Passengers have been using these steps; whether it was permitted or not I cannot say. I have seen them down there often. No part of the vessel is prohibited from the use of passengers when the vessel is at sea, to my knowledge. I do not know that this flight of steps was commonly used by passengers. I know they used it. They go down there to look at the engine-room. No one objected, to my knowledge. The passengers used the flight of steps that leads from there to the top or promenade deck. Picture No. 1 looks like the entrance or the flight of steps that leads from the top to the hurricane deck. Passengers used that first flight of steps. I have seen passengers use them. There is no bar or notice or warning prohibiting the use by passengers of those steps from the huricane deck to the main deck, to my knowledge. Right at the start of these steps there is a door leading out of the hurricane deck. Not to my knowledge is there any part of the ship that is prohibited to the use of first-class passengers. Passengers haven't any right down there; they go down there; that is for the crew; they have no right down there. There are only two entrances to the main deck that I know of in that vessel. I have not seen any passengers prohibited from the use of the main deck or from going to the main deck. The last I served on the St. Louis was during the war. I relieved Mr. Perry two or three months. I do not know when I started. Picture 4 shows the stairway leading to the main deck about which we have been talking,— the stairway running from the hurricane deck to the main deck. The height between those decks is about eight or nine feet."

We are of the opinion that the evidence tended to support those allegations of the petition which this court held were not supported upon the former hearing. The averments referred to are set forth in the opinion in that case, and are the same as those now contained in paragraph 7 of the first count. While the evidence does not use the identical language set forth in these averments, that is immaterial, if from the evidence as a whole, which was largely if not wholly circumstantial, the jury would have been authorized to infer that the allegations were. true. The new evidence may be considered not only by itself, but in connection with other evidence as to the location of the stairway in question and the character and

condition of the approaches thereto. If both the old and the new, considered together, will warrant the conclusion that these averments were established, the former ruling will be satisfied.

We are of the opinion that the evidence was sufficient to satisfy our former ruling, and that since the other material allegations of the petition were supported by some evidence (which it is unnecessary here to detail), the court was in error in awarding the nonsuit. The evidence as a whole upon the second trial was sufficient to carry the plaintiff's case to a jury.

*Judgment upon the main bill of exceptions reversed; upon the cross-bill affirmed. Jenkins, P. J., and Stephens, J., concur.*